In re TAYLORVILLE EISNER AGENCY, INC., a corporation, Bankrupt.

Vernon H. HOUCHEN, Trustee, Plaintiff-Appellee,

v.

FIRST NATIONAL BANK OF PANA, a corporation, Defendant-Appellant.

No. S–Bk–75–1538.

United States District Court, S. D. Illinois, S. D.

Dec. 30, 1977.

Vernon H. Houchen, for Trustee.

William H. Amling, Amling & Beyers, Pana, Ill., for defendant-appellant.

W. Scott Murphy, Owen, Roberts, Susler & Taylor, Decatur, Ill., for Jewel Companies, Inc.

Daniel G. Reese, Taylorville, Ill., for Trustee, plaintiff-appellee.

## OPINION

J. WALDO ACKERMAN, District Judge.

This is an appeal from an order of the Bankruptcy Judge disallowing a claim of the First National Bank of Pana (First National Bank) as to proceeds of the sale of inventory and merchandise of a bankrupt grocery store. It is necessary to consider, in a case of first impression in this State,

the construction to be given Section 9–402(7) of the Illinois Uniform Commercial Code, Ill.Rev.Stat. ch. 26 (hereinafter cited as UCC § ——).

## FACTS

On or about March 14, 1973, Charles E. Hebert and William D. Cooper (buyers) entered into an agreement with Robert Aldridge (seller) to purchase certain fixtures, equipment and inventory of a premises in Taylorville, Illinois, being operated as "Bob's Eisner Agency." The buyers made application to First National Bank to borrow the necessary money and thereafter executed a note to First National Bank dated April 1, 1973. A security agreement bearing the same date covering fixtures, equipment, inventory, and after-acquired property was also executed. Both the note and security agreement were signed by William Cooper and his wife, Gloria, and Charles Hebert and his wife, Carolyn. The First National Bank filed a proper financing statement with the Secretary of State on April 4, 1973, listing William Cooper and Charles Hebert as debtors and the address of the store in Taylorville.

Sometime prior to April 1, 1973, a corporate entity, Taylorville Eisner Agency, Inc., was formed. At 10:00 a. m., on the same day as the note and security agreement were signed, the Coopers and Heberts met as a board of directors of Taylorville Eisner Agency, Inc. At this initial meeting of the corporation the following officers were chosen: William Cooper, President; Gloria Cooper, Vice President; Carolyn Hebert, Secretary; and Charles Hebert, Treasurer. Among the business matters handled at this meeting, it was resolved that the corporation agreed to assume and pay the indebtedness of William Cooper, Gloria Cooper, Charles Hebert, and Carolyn Hebert, to the First National Bank in return for a transfer of the fixtures, equipment, and store inventory.

After April 1, 1973, Taylorville Eisner Agency, Inc., owned and operated the business. All payments made to the First Na-

tional Bank on the note were by checks drawn on a Taylorville bank from the account of Taylorville Eisner Agency, Inc., and all of the checks were properly credited on the account due the First National from the Coopers and Heberts. There was a continual change of merchandise and inventory held for resale in the store so that on October 1, 1975, the date on which the voluntary petition for bankruptcy was filed on behalf of Taylorville Eisner Agency, Inc., none of the original merchandise and inventory held for resale was the same as that owned on July 1, 1973. The fixtures and equipment of the bankrupt had remained the same following the transfer of ownership from the Coopers and Heberts to the corporation.

The First National Bank filed their proof of claim in bankruptcy as a secured creditor. A claimant, Jewel Companies, Inc., and the trustee in bankruptcy objected to the First National Bank claim insofar as it included merchandise and inventory acquired after four months from the filing of the April 4, 1973, financing statement. Their objection was based on UCC § 9–402(7).

The Bankruptcy Judge held that First National Bank was aware of the change in ownership and change in the name of this business entity; and that under Section 9–402(7) it was necessary for First National Bank to file a new appropriate financing statement before the expiration of four months from the date of the change in ownership. This was due to the finding that the filed financing statement became seriously misleading after the changes in ownership and name of the business entity. Based on these factual findings and his interpretation of the statute, the Bankruptcy Judge allowed First National Bank's secured claim as to the fixtures and equipment acquired within four months of the date on which the financing statement became misleading, but held First National Bank had only a general unsecured claim as to the proceeds of the sale of inventory and merchandise acquired after the four month period.

## STATUTE

Article IX of the Illinois Commercial Code is a comprehensive system designed to cover chattel security law. Basically it provides a way in which a secured party and debtor may enter into a security agreement which gives the secured party certain rights in specified collateral. As one means of giving notice of that interest to third parties, the code adopts the concept of notice filing. Notice filing involves the preparation of a financing statement and filing of it as required by the code. When required (UCC § 9–302), proper filing makes the security interest "perfected" (UCC § 9–303) and this may provide the secured party protection under the priorities provision (UCC § 9–312) as against conflicting interests in the same collateral. The portion of this statutory scheme with which we are concerned here is UCC § 9–402 which covers the formal requisites of the initial filing and later amendment of a financing statement. Subsection 7 provides:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity, or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

No cases have been found interpreting this provision of the Illinois statute. Subsection 7 was a new provision added to the code effective July 1, 1973. While there is no legislative history for the amendment, it is noted that the Illinois code changes were

exactly the same as the 1972 changes in the Uniform Commercial Code as promulgated by the American Law Institute, and National Conference of Commissioner's on Uniform State Laws. Thus, the Official Comments to the UCC may be of some help in interpretation.

## ANALYSIS

Since we have a naked statute, unclothed with either legislative intent or judicial construction, the parties have striven mightily to dissect and give meaning to the words and sentences of the crucial subsection. The parties have endeavored to robe the statute according to their individual tastes. Under these circumstances it is necessary for me to lend a judicial imprimatur to one of the suggested interpretations.

The first question is what problem or problems did the legislature intend to address in UCC § 9–402(7) and the effect on the present facts. The subsection deals with several different problems. The first sentence speaks to the sufficiency of the debtor's name which must appear on a financing statement under UCC § 9–402(1). Since the statement is indexed according to the name of the debtor (UCC § 9–403(4) ), it is essential that the proper debtor's name appear on the financing statement else one searching the index will be unable to detect the security interest. In this case there was no objection to the sufficiency of the financing statement as originally filed on April 4, 1973.

The second sentence appears to be related to the first in that they both are intended to insure indexing according to the current name of the debtor. While the first sentence deals with how the debtor is to be identified at the time of the original filing, the second sentence deals with the situation where there is a subsequent change: in the case of an individual, where there is a change of name, or in the case of an organization, where there is a change in its name, identity, or corporate structure. Where such a change occurs the secured party must determine whether the filed financing statement has become seriously misleading. If so, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change unless a new appropriate financing statement is filed before the expiration of that time. There is no knowledge requirement included in the sentence. That means that from the time a change occurs which makes the financing statement misleading there must be a refiling within four months. The burden of realizing a change has occurred, checking the effect the change has on the financing statement, and filing a new financing statement within four months if necessary, is upon the secured party.[1]

The third and final sentence of the subsection deals with a different problem, namely where the debtor transfers the secured collateral and what effect this has on the secured parties' interest. Prior to this provision it was debated as to whether the security interest would continue in the collateral even after it entered the possession of the transferee, whether any after-acquired property of the transferee could be included under the original debtor's security interest, and whether a new filing was necessary. This question arose frequently because under UCC § 9–311 the secured party cannot prevent the debtor from transferring rights in collateral. The final sentence of this amendment to UCC § 9–402(7) settles the question by saying that no new financing statement must be filed.

As the Official Comments to the Uniform Commercial Code indicate:

Any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title and must search in the name of a former owner if circumstances seem to require it.

1. It is possible, by reviewing filing required under Illinois law, to be advised of changes of names of individuals, Ill.Rev.Stat. ch. 96; partnerships, Ill.Rev.Stat. ch. 96 (as to whether a partnership exists see Ill.Rev.Stat. ch. 106½ §§ 6–7); and corporations, Ill.Rev.Stat. ch. 32 §§ 157.9, 157.10, 157.47, 157.52, 157.55, and 157.55a and 157.56.

The comments to the Illinois code which appear in *Smith Hurd Illinois Statutes Annotated* say in part:

> The proper interpretation (of the third sentence) it is believed, therefore limits the "transfer" in question to one by a debtor—e. g., an individual or a partnership—to a successor enterprise—e. g., a corporation whose stock is owned by the individual or the partners of the debtor transferor.

The secured party in this case, First National Bank, has taken the position that the individual debtors transferred the equipment and inventory subject to the security interest to the corporation. First National Bank contends that this transfer situation is governed by the third sentence and there was no need for a refiling regardless of whether they knew or consented to the transfer. It is the bank's position that the second sentence has no application to situations governed by the third sentence.

The claimant and trustee in bankruptcy argue, and the Bankruptcy Judge agrees, that while the final sentence may protect the secured party in a transfer situation as to collateral already transferred by the debtor, that the provisions of the second sentence may still apply to after-acquired property. Their interpretation would require the following actions on the part of a secured party: find out that the collateral has been transferred by the debtor, determine whether the possession of the collateral by the transferee has made the filed financing statement seriously misleading and if so file a new financing statement with the name of the transferee within four months after the transfer. Failure to do so would result in a loss of the perfected security interest in collateral acquired by the transferee after the four month period.

■ This attempt to reconcile the second and third sentences does not appear to me to be a correct interpretation. In practically all cases of transfer of secured collateral the transferee would have a different name, identity, or corporate organization. That would mean the secured party would have to refile in practically all instances within four months or lose all of its interest in after-acquired property. "Collateral" as used in the final sentence is not limited as it is in the second sentence where it is defined as that collateral acquired by the debtor more than four months after the change. Rather, the final sentence speaks of collateral transferred by the debtor, which must mean the property subject to the security interest as defined in UCC § 9–105(1)(c). In this case the security interest covered existing fixtures and equipment as well as acquired inventory and merchandise.

■ This opinion also appears to be consistent with the code's goal of promoting commercial reasonableness (UCC § 1–102). The secured party apparently has the duty under the second sentence of subsection 7 to monitor the identity of the debtor. A secured party must take steps to insure that it will become aware of any name, identity, or corporate changes of its debtors within four months or risk losing their perfected security interest in collateral acquired after that time should the financing statement be found seriously misleading at the time of the change.

■ The third sentence transfer situation is somewhat different. In the present case the transferee corporation clearly knew from the note and security agreement of the transferor debtor that the collateral, including after-acquired inventory and merchandise, was subject to a perfected security interest. The third sentence of subsection 7 is clear that the filed statement remains effective with respect to collateral transferred by the debtor regardless of the knowledge or consent of the secured party. This also means collateral which is after-acquired property. Prospective creditors of the transferor have a duty to inquire as to the source of title if circumstances dictate. For a discussion of this rule and some of the mitigating factors against its apparent harshness, see Coogan, *The New UCC Article 9*, 86 *Harv.L.Rev.* 477, 526–27 (1973).

■ In the instant case had any creditors checked the corporation's source of title they could have easily discovered the as-

sumption of the notes which were in the individuals' names and by running a check on those names found the filed financing statements. This information appears to be more easily accessible to prospective creditors of the transferee than the secured party of the transferor debtor. The transferee or prospective creditor could expect to receive only what the transferor debtor had, that is, the right to the equipment, fixtures, inventory and future inventory subject to the security interest of the secured party.

It is thus my opinion that First National Bank did not have to file a new financing statement within four months after the transfer in order to retain its perfected security interest in after-acquired property. The decision of the Bankruptcy Judge is reversed.